## Case No. 6,559.

### HODGE et al. v. HUDSON RIVER R. CO.

### SAME v. NEW YORK & H. R. CO.

[3 Fish. Pat. Cas. 410; 6 Blatchf. 85; 1 Am.
Law T. Rep. U. S. Cts. 40.] [2]

Circuit Court, S. D. New York.   April 8,
1868.

PATENTS —INFRINGEMENT —WHAT COURT HAS JU-
RISDICTION—LICENSE—DURATION—USE OF
BRAKE ON CARS OF ANOTHER ROAD.

1. Where the alleged infringement occurred
within the Northern district of New York. held.
that under the provisions of section 6 of the act
of April 3, 1818 [3 Stat. 415]. the circuit court
for the Southern district of New York had no
original jurisdiction.

2. Where a railroad company was licensed
under letters patent to use the patented im-
provement upon their cars, and the alleged in-
fringement consisted in the use of said im-
provement upon the cars of other roads run-
ning over their tracks, held. that it was for the
complainants to show, affirmatively, that the

1 [Reported by Hon. William Cranch, Chief
Judge.]
2 [Reported by Samuel S. Fisher. Esq.. and
by Hon. Samuel Blatchford. District Judge,
and here compiled and reprinted by permission.
The syllabus and opinion are from 3 Fish. Pat.
Cas. 410. and the statement is from 6 Blatchf.
85. 1 Am. Law T. Rep. U. S. Cts. 40, con-
tains only a partial report.]

cars in question did not belong to the licensed
road.

3. A provision in a license that a privilege is
to continue during the term for which said let-
ters patent are or may be granted is satisfied
by holding it to apply exclusively to a reissue of
the patent.   There is nothing in the language
which makes it exclusively or even necessarily
applicable to an extension.

4. The presumption of the law in regard to
every license under a patent is, that the par-
ties deal in regard only to the term existing
when the license is given, unless an express pro-
vision is inserted looking to a further interest.

5. The term for which "said" letters, pat-
ent (that is, the original letters patent), were
granted or might be granted, was a term ending
fourteen years from the date thereof.   It is im-
possible on any fair construction of language,
and in view of the adjudged cases, to hold that
the license was intended by the parties to cov-
er an extended term of the patent.

6. As the thing patented in the present case
is a machine. the law is entirely settled that the
only right which the company, as a lawful li-
censee under the patent for the first term of the
right to use the thing patented, acquires under
the extended term, by virtue of section 18 of the
act of 1836 [5 Stat. 124], is the right to continue
to use. until they are worn out, or as long as
they can be required, such brakes as they had
lawfully in use under said license when the orig-
inal patent expired.

7. The license granted to the New York and
Harlem Railroad Company, June 1, 1864, ex-
tends only to cars owned by that company.   It
does not therefore authorize the use on its road
of the brakes which are on the cars belonging
to the Hudson River Railroad Company.

[Cited in Jenkins v. Nicolson Pavement Co.,
Case No. 7.273.]

8. A license to the New Haven Railroad
Company, authorizing them to run their cars
with the patented improvements, on and over
any and all other railroads wherever their busi-
ness leads them, authorized said company to
run their cars upon the New York and Harlem
Railroad, under an agreement between the two
companies, giving to the former company the
privilege of running its cars on the track of the
latter company, and will protect the latter com-
pany against a suit for an infringement of the
patent.

[Bill in equity by Amelia S. Hodge and
Zelia C. Hodge. as administratrixes, etc., of
Nehemiah Hodge. against the Hudson River
Railroad Company and the New York and
Harlem Railroad Company.]

3[This was a motion for a provisional in-
junction, made in each one of two suits, to re-
strain the infringement of letters patent for
an "improvement in the mode of operating
brakes for cars," issued to Nehemiah Hodge,
October 2d, 1849 [No. 6.762], reissued to him
March 1st, 1853 [No. 231], and extended to
him September 16th, 1863, for seven years
from October 2d, 1863.]3

Samuel D. Cozzens and M. M. Livingston,
for plaintiffs.

Charles A. Rapallo and F. Loomis, for de-
fendants.

BLATCHFORD. District Judge.   The mo-
tion in the suit against the Hudson River
Railroad Company will be first considered.
The several acts of infringement alleged in

3 [From 6 Blatchf. 85.]

that suit are: (1) The running, by the Hudson River Railroad Company, between East Albany and Troy, of cars belonging to the New York and Harlem Railroad Company, provided with infringing brakes; (2) the running, by the Hudson River Railroad Company, across the bridge of the Hudson River Bridge Company, at Albany, of cars belonging to the Hudson River Railroad Company, containing infringing brakes; (3) the running, by the Hudson River Railroad Company, upon their own railroad, at or near Peekskill, in the Southern district of New York, of cars marked "New York, Sus. Bridge & Buffalo," and of cars known as "sleeping cars" and "drawing-room cars," containing infringing brakes, which cars are alleged not to have belonged to the Hudson River Railroad Company; (4) the running, by the Hudson River Railroad Company, on the tracks of the Troy and Greenbush Railroad Company, and on the tracks of the Troy Union Railroad Company, of cars belonging to the Hudson River Railroad Company, containing infringing brakes; (5) the running, by the Hudson River Railroad Company, on their railroad, of freight cars, not belonging to themselves, known as the "White Line," containing infringing brakes (it being assumed that such running was within this district); (6) the operating, by the Hudson River Railroad Company, of cars of the "Blue Line," not belonging to themselves (it being assumed that such operating was on the railroad of said company, and within this district.)

The first, second and fourth alleged infringements occurred within the Northern district of New York. The causes of action growing therefrom arose, therefore, within that district, and, under the provisions of the sixth section of the act of April 3, 1818 (3 Stat. 415), this court has no original jurisdiction of such causes of action.

In regard to so much of the third alleged infringement as relates to cars marked "New York Sus. Bridge & Buffalo," and in regard to the fifth and sixth alleged infringements, the Hudson River Railroad Company show that they own, and run upon their road, cars marked "New York, Sus. Bridge & Buffalo," and also freight cars known as "White Line" cars, and "Blue Line" cars, and that they cannot say whether the cars so marked, referred to in the affidavit on the part of the plaintiffs, were the cars of the Hudson River Railroad Company or not. If the cars referred to did not belong to the Hudson River Railroad Company, it is for the plaintiffs to show the fact affirmatively, or else, on the evidence, it must be assumed that such cars did belong to that company. The plaintiffs have not shown that such cars did not belong to that company. They should have designated the particular cars by numbers, or other sufficient description, so as to have required and enabled the defendants to show whether such cars were or were not their

property. In regard to so much of the third alleged infringement as relates to cars known as "sleeping cars" and "drawing-room cars," the Hudson River Railroad Company show that the trucks and running gear, including the brakes, of such cars, belong to that company.

The only question for consideration, therefore, is, whether the company, by using the patented brake, within this district, on their own railroad, on cars belonging to them, marked "New York, Sus. Bridge & Buffalo," and on cars belonging to them known as "White Line" cars, and on cars belonging to them known as "Blue Line" cars, and by using the patented brake, within this district, on their own railroad, on sleeping cars and drawing-room cars, the brakes, trucks, and running-gear of which cars belonged to them, have infringed the patent in question, as extended. It is understood, that all the alleged infringements set up occurred in November, 1867, and therefore since the extension of the patent. The company justify such use, under a license granted to them by the patentee, April 8th, 1862, whereby he licenses them "to construct and use said improvement on any and all cars belonging to said company, and to use the same improvement upon the entire length of their road, and upon all parts thereof, extending from the city of New York, in the state of New York, to the city of Troy, in said state, for and during the term for which said letters patent are or may be granted." Brakes belonging to the company, attached to trucks and running-gear belonging to them, and so used, are, undoubtedly, within the meaning of the license, used on cars belonging to the company, even though the superstructures which are borne upon the trucks do not belong to the company. The license, therefore, covers all that has been thus done by the company, that is, the use of the patented improvement on cars belonging to the company, on their own railroad, so far as the extent of their acts is concerned. As to the duration of the license, nothing is said, in the license, about an extension of the patent. The license is to continue "for and during the term for which said letters patent are or may be granted." The first question that arises is, as to the meaning of these words, "may be," and whether they refer to or can be construed to include an extended term of the patent. I do not think there is any thing in the license to indicate that the parties to it had at all in view a continuance of the license during any extended term of the patent. The provision that the license is to continue "during the term for which said letters patent are or may be granted," is satisfied by holding it to apply exclusively to a reissue of the patent. There is nothing in the language which makes it exclusively or even necessarily applicable to an extension. The presumption of law in regard to every license under a patent is, that the parties deal in regard only

to the term existing when the license is given, unless an express provision is inserted looking to a further interest. Wilson v. Rousseau, 4 How. [45 U. S.] 646, 685, 686. Unless there be such a stipulation, showing that the parties contemplated an extension, the court is bound to construe the instrument, in each and all of its provisions, as relating to the then existing term only. Gibson v. Cook [Case No. 5,393]. The language of the license in the present case is very different from the language of the instrument in the case of Phelps v. Comstock [Id. 11,075]. In that case, the language was, "to the full end of the term or terms for which letters patent are or may be granted for said improvements." The court held that that language embraced any subsequent extension of the patent. So, also, in Case v. Redfield [Id. 2,494], where the court held that the language of the instrument embraced an extention, the language was, "all the right, title, and interest * * * in said invention and improvement, as secured * * * by said letters patent, for the whole of the United States, * * * for which letters patent were or may be granted for said improvements." In Clum v. Brewer [Id. 2,909], where the court held that the parties intended to cover an interest in any extension, the language was, "one undivided fourth part of my said invention, and of all my rights and property therein, secured by my said caveat or otherwise, that I have or may have from any letters patent for the same, granted by the government of the United States and within the limits thereof." In Pitts v. Hall [Id. 11,193], where the court held that there was no doubt that the parties intended, by the language used, to refer to and provide for an extension, the language to that effect was clear and unambiguous. In all four of the cases referred to, the instrument under consideration was one purporting to convey, by assignment or grant, an interest in the invention patented, and an interest in the entire right granted by the existing patent to make and use and vend to others to be used the · invention patented. As Mr. Justice Curtis says, in Clum v. Brewer [supra]: "Where the invention is the subject sold, it would be natural to expect to find, in the instrument of sale, something showing an intention that the purchaser should be interested, not merely in the original letters patent, but in any extension thereof, securing the exclusive right to the same invention which was the subject of the sale." In the present case, neither the invention, nor any interest in it, nor any interest in the entire right covered by the patent, was granted, but merely a license to use the invention, and to construct brakes containing it for such use, on certain cars, on a certain railroad, and such license is to continue "during the term for which said letters patent are or may be granted." "The term" for which "said" letters patent, that is, the letters patent granted Oc-

tober 2d, 1849, and reissued March 1st, 1853, were granted, or might be granted, was a term ending October 2d, 1863. It is impossible, on any fair construction of the language, and in view of the adjudged cases, to hold that the license was intended by the parties to cover an extended term of the patent.

There being, then, in this case, no express stipulation carrying the license into the extended term, the only right which the Hudson River Railroad Company possesses, under the extended term, is that which is given to it by the clause of the 18th section of the act of July 4th, 1836 (5 Stat. 125), which provides that the benefit of the extension of a patent shall "extend to assignees and grantees of the right to use the thing patented to the extent of their respective interest therein." As the thing patented in the present case is a machine, the law is entirely settled, that the only right which the company, as a lawful licensee under the patent, for the first term, of the right to use the thing patented, acquired under the extended term, by virtue of that clause in the 18th section, is the right to continue to use, until they are worn out, or as long as they can be repaired, such brakes as they had lawfully in use, under said license, on the 2d of October, 1863. Wilson v. Rousseau, 4 How. [45 U. S.] 646; Bloomer v. McQuewan, 14 How. [55 U. S.] 539; Chaffee v. Boston Belting Co., 22 How. [63 U. S.] 217; Bloomer v. Millinger, 1 Wall. [68 U. S.] 340. As it is not shown in the papers whether the particular brakes used by the company since the 2d of October, 1863, on their own railroad, on cars belonging to them, marked "New York, Sus. Bridge & Buffalo," and on cars belonging to them known as "White Line" cars, and on cars belonging to them known as "Blue Line" cars, and on sleeping cars and drawing-room cars, the brakes, trucks, and running gear of which cars belonged to them, were, or were not, lawfully in use under said license on the 2d of October, 1863, it is impossible for this court to decide whether the plaintiffs are, or are not, entitled to an injunction, as respects those particular brakes. The decision of the motion, as regards the Hudson River Railroad Company is, therefore, suspended, to allow the plaintiffs to supply evidence on this point, and with leave to them to do so on notice to the company.

The several acts of infringement set forth in the suit against the New York and Harlem Railroad Company are: (1) The running, by the New York and Harlem Railroad Company, upon their own railroad, at or near Bedford, in the Southern district of New York, of freight cars belonging to the Hudson River Railroad Company, containing infringing brakes; (2) the running on the tracks of the New York and Harlem Railroad Company, of cars belonging to the New York and New Haven Railroad Company, containing infringing brakes, (it being as-

sumed that such running was within this district.) The alleged infringement occurred in November, 1867, and January, 1868. The New York and Harlem Railroad Company set up, in defence, that no freight cars of the Hudson River Railroad Company have been used by the New York and Harlem Railroad Company, except such cars as were caused by the former company to be run over the railroad of the latter company, and in which running and use both of the companies were interested, and from which running and use both of the companies derived pecuniary profit; and that the cars of the New York and New Haven Railroad Company have been run by that company over a portion of the track of the New York and Harlem Railroad Company, under an agreement between the two companies, giving to the former company the privilege of running its cars on the track of the latter company, and that the cars in question were run by the former company under that agreement. To justify such use, the New York and Harlem Railroad Company set up three licenses under the patent, granted by the patentee, one to the New York and Harlem Railroad Company, one to the Hudson River Railroad Company, and one to the New York and New Haven Railroad Company.

The license to the New York and Harlem Railroad Company was granted on the 1st of June, 1864, after the extension. It recites the fact that the patent had been extended, and that the company "desire the right and license to construct and use said improvement anew and subsequent to the date of, and during the term of, said extension, as well on cars which may be built or purchased by said company subsequent to the date of said extension, as upon cars not fitted up with said improvement before the date of said extension," and then licenses "said company, and any and all other parties that may hereafter own or operate the said New York and Harlem Railroad, to construct and use said improvement anew on any and all cars now, or hereafter, owned by said company, or by parties that may hereafter own or operate said New York and Harlem Railroad, all such construction and use to extend to and over the said New York and Harlem Railroad, and on, to, and over, the roads where said cars may be employed or run on joint business." This license extends only to cars owned by the New York and Harlem Railroad Company. It does not extend to cars belonging to the Hudson River Railroad Company, or to cars belonging to the New York and New Haven Railroad Company. The New York and New Haven Railroad Company cannot properly be considered, within the meaning of the license, as operating the New York and Harlem Railroad, in running their own cars on that road, under a permission to that effect. Therefore, the license to the New York and Harlem Railroad Company does not authorize the use on its road of the brakes which are on the freight cars in question belonging to the Hudson River Railroad Company.

The license to the Hudson River Railroad Company, which is set up to justify the use, since the 2d of October, 1863, by the New York and Harlem Railroad Company, on its own road, of freight cars which belong to the Hudson River Railroad Company, and which the latter company causes to be run over the road of the former company, and in the running and use of which both of the companies are interested, and from the running and use of which both of the companies derive pecuniary profit, is the same license to the Hudson River Railroad Company, dated April 8th, 1862, which has been before referred to, and the provisions of which have been considered in reference to the motion for an injunction against that company. In addition to the clauses before mentioned, the following provision is contained in the license: "I also further authorize and license said company to run, or cause to be run, their said cars, with said improvement thereon, on and over other roads, on joint business, during the term above stated." This provision, while it is broad enough to cover the use in question of the cars of the Hudson River Railroad Company, on the road of the New York and Harlem Railroad Company, during the first term of the patent, is limited to that term, and does not run into the extended term. There is nothing in this license to justify the use complained of since the extension. Such use must be upheld, if at all, by showing that the brakes on the cars belonging to the Hudson River Railroad Company, which that company have caused to be run on the road of the New York and Harlem Railroad Company, on joint business, since the extension, were brakes lawfully in use on the 2d of October, 1863. No evidence is furnished on which the court can decide this point as to those brakes, and the motion in that respect is suspended, to allow the evidence to be supplied.

The license to the New York and New Haven Railroad Company, which is set up to justify the running by that company of its own cars on the tracks of the New York and Harlem Railroad Company, by the permission of the latter company, is dated April 22d, 1864. It recites the extension, and the fact that the company "desire the right and license to construct and use said improvement anew and subsequent to the date of, and during the term of, said extension, as well on new cars which may be built or purchased by said company subsequent to the date of such extension, as upon cars not fitted up with said improvement before the date of such extension," and then licenses the company "to construct and use said improvement anew, on any cars belonging to them, and during the term of said extension, and not included by law in the former license given by me to said company." The license

was then signed by the patentee and witnessed, and had the proper internal revenue stamp affixed. The following clause was then added, and signed by the patentee, and witnessed and stamped, bearing the same date with the license which preceded it— April 22d, 1864: "And it is hereby further agreed and understood, that said New York and New Haven Railroad Company are authorized, under the foregoing license, to run their said cars, with said improvements in use thereon, on and over any and all other railroads, wherever their business leads them, and to receive upon and use on their own road the cars of any other railroad company, with said improvement in use thereon, without any further claim for compensation from me, or from any person under me, whatsoever, all of which privileges are to extend through the term of said extension, and any subsequent extension, and furthermore through all future time." This additional clause manifestly gives to the New York and New Haven Railroad Company the right, during the extension, to run their own cars, with the patented brake on them, on and over the road of the New York and Harlem Railroad Company, provided the legitimate business of the former company leads them to do so. It is shown, on the part of the defendants, that the cars of the New York and New Haven Railroad Company which are complained of as having been run on the tracks of the New York and Harlem Railroad Company, have been so run by the former company under an agreement between the two companies, giving to the former company the privilege of running its cars on the track of the latter company; and it is not denied by the plaintiffs, that the legitimate business of the former company led them to so run the particular cars in question. The motion for an injunction is, therefore, denied, so far as regards the cars of the New York and New Haven Railroad Company which have been so run on the tracks of the New York and Harlem Railroad Company.

[For other cases involving this patent, see note to Hodge v. North Missouri R. R., Case No. 6,561.]